IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| VERA M. MORRIS and CHRISTOPHER E. WILKERSON, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 19-cv-2874-MSN-tmp ) |
| CITY OF MEMPHIS (POLICE DEPARTMENT, MEMPHIS LIGHT GAS AND WATER DIVISION, OFFICER BURTON, OFFICER WEBB, and D. ARMSTRONG, | ) ) ) ) ) ) |
| Defendants. | ) |

_____

REPORT AND RECOMMENDATION
_____

Before the court is a motion to dismiss filed by defendants Memphis Light, Gas and Water and David Armstrong (collectively "MLGW" or "MLGW Defendants") on June 2, 2020.[1] (ECF No. 16.) Plaintiffs Vera M. Morris and Christopher E. Wilkerson filed their response on June 4, 2020. (ECF No. 17.) MLGW filed a reply on June 19, 2020. (ECF No. 21.) For the reasons below, the undersigned recommends that the motion to dismiss be granted.

I. PROPOSED FINDINGS OF FACT

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

On December 19, 2019, Morris and Wilkerson filed a *pro se* complaint asserting § 1983 claims for violations of the Fourth and Fourteenth Amendments against MLGW, Armstrong, the City of Memphis Police Department ("MPD"), Officer Webb, and Officer Burton. (ECF No. 1.) According to the complaint, Morris is Wilkerson's mother, and the two live together at a residence on Downs Street in Memphis, Tennessee. (Id. at 6.)

On November 13, 2019, MPD Officers Burton and Web along with Armstrong, a MLGW corporate investigator, entered plaintiffs' home without knocking, requesting permission to enter, or announcing their presence. (Id.) Plaintiffs assert that the officers had no probable cause or warrant to search the residence. (Id.) According to the complaint, Morris was at the door greeting her home healthcare provider when the officers "pushed [their] way into [the] home with a show of force on [Morris]." (Id.) Morris asked why the officers were there, and they responded that they were looking for her son, Antonio, regarding an unpaid electric bill associated with a residence located on Timberwood Drive in Memphis, Tennessee. (Id.) Plaintiffs assert that the officers refused to leave despite being repeatedly asked to leave the residence. (Id.) The officers then entered another room where Antonio was asleep on the couch. (Id.) The officers woke him up and began demanding that he pay the electric bill. (Id.) The officers then threatened to disconnect the electricity services at the Downs Street residence

if Antonio did not pay the electric bill for his Timberwood Drive residence by the end of the week. (Id.) According to the complaint, Antonio is not listed on the lease or utility bill for the Downs Street residence. (Id.)

Plaintiff Christopher Wilkerson was at work when this occurred and did not learn what had happened until contacted by Morris after the officers left. (Id.) Later that day, Wilkerson filed a complaint with MLGW and complained at the MPD precinct where Officers Burton and Webb worked. (Id.) According to the complaint, the lieutenant on duty listened to Wilkerson's complaints and then watched the video footage of the incident recorded by the officers' body cameras, after which the lieutenant apologized to Wilkerson and said the officers would be reprimanded. (Id.) Wilkerson then filed a complaint with the MPD Internal Affairs Department, where someone "watched the tape and agreed that the officers did not follow the proper policy and procedures when escorting a party to an address." (Id.)

According to the complaint, as a result of the incident, Morris required medical treatment from her nurse and "was sick for weeks at a time." (Id.) Morris suffered mental and psychological trauma and migraine headaches. (Id.) Wilkerson had to miss work to care for Morris, which Wilkerson asserts resulted in him being laid off earlier than scheduled. (Id.)

## II. PROPOSED CONCLUSIONS OF LAW

## A. Standard of Review

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Barnett v. Luttrell, 414 F. App'x 784, 786 (6th Cir. 2011) (internal quotation marks omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While the court must view the factual allegations in the light most favorable to the plaintiff, the court need not "accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted).

Although courts construe *pro se* complaints liberally, "[t]he basic pleading essentials are not abrogated in *pro se* cases." Matthews v. City of Memphis, No. 2:14-cv-02094, 2014 WL 3049906, at *3 (W.D. Tenn. July 3, 2014) (citing Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989)); see also Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to *pro se* litigants has limits."). In other words, even

*pro se* complaints must satisfy the plausibility standard. See Barnett, 414 F. App'x at 786. "Courts 'have no obligation to act as counsel or paralegal' to *pro se* litigants." Matthews, 2014 WL 3049906, at *3 (quoting Pliler v. Ford, 542 U.S. 225, 231 (2004)). "Courts are also not 'required to create' a *pro se* litigant's claim for him." Id. (quoting Payne v. Sec'y of Treasury, 73 F. App'x 836, 837 (6th Cir. 2003)).

**B.  § 1983 Claims Against Armstrong**

Defendants argue that plaintiffs' claims against Armstrong in both his official and individual capacities should be dismissed. Regarding the official-capacity claim, defendants argue that the claim is duplicative of plaintiffs' corresponding claim against MLGW. "Official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Thorpe v. Breathitt County Bd. of Educ., 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also Baar v. Jefferson Cnty. Bd. of Educ., 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010), *aff'd*, 476 F. App'x 621 (6th Cir. 2012). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166 (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)). "As a result, when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his

or her official capacity, federal courts will dismiss the official-capacity claim." Thorpe, 932 F. Supp. 2d at 802 (citing Doe v. Claiborne Cnty, Tenn. By & Through Claiborne Cnty. Bd. of Educ., 103 F.3d 495, 509 (6th Cir. 1996); Baar, 686 F.Supp.2d at 704). Based on the above, plaintiffs' official-capacity claim against Armstrong is duplicative and should be dismissed.

As to the individual-capacity claim against Armstrong, defendants argue for dismissal based on the fact that plaintiffs do not attribute any specific conduct to Armstrong in the complaint. Rather, plaintiffs refer to Armstrong, Officer Burton, and Officer Webb collectively as "officers" or "they" throughout the allegations in the complaint. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." Heyerman v. County of Calhoun, 680 F.3d 642, 647 (6th Cir. 2012) (citing Murphy v. Grenier, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"); Gibson v. Matthews, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants")). As defendants point out, the complaint contains no allegations specific to Armstrong. Rather, Armstrong is mentioned only collectively alongside Officer Burton and Officer Webb in

allegations describing the conduct of the "officers." In addition, while initially using the terms "they" and "officers" to refer to all three individual defendants, plaintiffs later use those same terms to refer only to Officers Burton and Webb. For example, plaintiffs allege that an MPD lieutenant told Wilkerson that "the officers will be reprimanded," and a representative from MPD Internal Affairs told Wilkerson that "the officers did not follow the proper policy and procedures when escorting a party to an address." (ECF No. 1, at 6.) The latter of the two statements suggests Armstrong had a more passive role in the events described in the complaint, referring to Armstrong only as a party being escorted to that address. Plaintiffs' collective allegations are insufficient to survive a Rule 12(b)(6) motion to dismiss because they do not put Armstrong on notice of the claims against him or plausibly establish that he engaged in any individual conduct contributing to the harm alleged. Accordingly, it is recommended that plaintiffs' claims against Armstrong be dismissed.

**C.  § 1983 Claims Against MLGW**

MLGW argues that plaintiffs' municipal liability claim should be dismissed because plaintiffs have not identified any MLGW policy or custom or sufficiently alleged any constitutional violation. "[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" Andrews v. Wayne Cty., 957 F.3d 714, 721 (6th Cir.

2020) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The policy identified must be "so permanent and well settled as to constitute a custom or usage with the force of law." Worcester v. Stark State Coll., 806 F. App'x 460, 462 (6th Cir. 2020) (citing Doe v. Claiborne Cty., 103 F.3d 495, 507 (6th Cir. 1996)). In other words, "[a] municipality cannot be held liable simply because one of its employees has committed a constitutional violation." Andrews, 957 F.3d at 721 (citing Monell, 436 U.S. at 694). The plaintiff must allege an injury "caused by [the implementation of] a municipal custom or policy." Id. (quoting Arrington-Bey v. City of Bedford Heights, 858 F.3d 988, 994 (6th Cir. 2017); Morgan v. Fairfield Cty., 903 F.3d 553, 565 (6th Cir. 2018)). In this case, plaintiffs have not alleged that MLGW "caused [their] injury through an institutional policy or custom." Worcester, 806 F. App'x at 462 (citing Monell, 436 U.S. at 694). Because the complaint does not identify any MLGW policy or custom, plaintiffs' § 1983 claim against MLGW should be dismissed. See id.

### III. RECOMMENDATION

Based on the above, the undersigned recommends that the motion to dismiss be granted.

Respectfully submitted,

        s/ Tu M. Pham
        TU M. PHAM
        Chief United States Magistrate Judge

December 11, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**